IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE NO. 4:14-CR-25-HLM-WEJ |
| MICHAEL MANSFIELD, | |
| Defendant. | |

## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on defendant Michael Mansfield's Motion to Suppress Statements [15]. On August 13, 2014, the Court conducted an evidentiary hearing [18] regarding the instant Motion, which has been transcribed [19]. The parties have briefed the matter. (See Def.'s Post-Hr'g Br. Supp. Mot. Suppress [20] ("Def.'s Br."); Gov't Resp. [22].) On the basis of the testimony and documentary evidence produced at that hearing and the briefs of counsel, the undersigned **REPORTS** that Mr. Mansfield waived his Sixth Amendment right to counsel and therefore **RECOMMENDS** that defendant's Motion to Suppress Statements be **DENIED**.

AO 72A
(Rev.8/82)

## I. RELEVANT FACTS

Federal agents first encountered defendant Mansfield on February 15, 2014, while executing a search warrant at a Rome, Georgia residence. (Tr. 6, 21-22.) The search warrant related to an investigation of crimes allegedly committed by other occupants of the home (i.e., possession of explosives) which are unrelated to the child pornography charge in this case. (Id. at 6, 31-32.) During the search, agents seized defendant's computer. (Id. at 7-8.)

Because of his possible connection to the other crime under investigation, an Assistant United States Attorney sent a target letter to Mr. Mansfield on February 24, 2014. (See Def.'s Ex. 1, "Re: Conspiracy to Possess Explosive Devices"; see also Tr. 22-23, 30.) In response to that target letter, Mr. Mansfield immediately sought counsel. The undersigned appointed William Sparks, Esq. to represent Mr. Mansfield on February 25, 2014. (See Def.'s Ex. 2, CJA 20 Appointment Order.)[1] At that time, the government did not suspect that Mr. Mansfield was in possession of child pornography, and the appointment of counsel did not relate to that issue.

---

[1] FBI Special Agent Micah Childers was aware of both the target letter and Mr. Sparks's appointment as Mr. Mansfield's counsel. (Tr. 7, 22-23.)

2

(Tr. 6-7, 31-32, 36.)   Mr. Mansfield has never been charged with the crime referenced in the target letter.  (Id. at 7, 35-36.)

On or about March 7, 2014, the government analyzed the hard drive of Mr. Mansfield's computer and reportedly discovered some evidence of child pornography.  (Tr. 7-8, 36.)  In April 2014, the government sought and obtained a search warrant for his computer.  (Id. at 8.)  The subsequent search reportedly located images constituting child pornography.  (Id.)  The grand jury returned the instant Indictment [3] on May 29, 2014.  (Tr. 8.)

In early June 2014, Agent Childers arranged for the return of a large number of computers and electronic devices that had been seized in the search on February 15, 2014, to the occupants of the aforementioned residence.  (Tr. 9, 23, 32.)  In so doing, Agent Childers spoke to Natasha Peace, an occupant of that residence, and asked whether she had contact information for Mr. Mansfield.  (Id. at 23-24, 33.)  Agent Childers was interested in obtaining that information because defendant had been indicted on the child pornography charge and was the subject of an arrest warrant.  (Id. at 25, 32-33.)  Ms. Peace responded that she had an email address for Mr. Mansfield, which was the same one found on his computer.  (Id. at 33.)

3

Apparently after learning that the government had returned computers to other occupants of the residence, Mr. Mansfield contacted Sylvia Payne of the FBI's Asset Forfeiture Division to inquire about the return of his computer. (Tr. 9, 24, 33-34.) Ms. Payne notified Agent Childers of Mr. Mansfield's overture. (Id. at 24.) Agent Childers then sent an email to Mr. Mansfield, asking for his contact information in the event that the FBI elected to return his computer. (Id. at 9.)

Agent Childers subsequently arranged a meeting with Mr. Mansfield at the FBI's office in Austin, Texas, the city where defendant was then residing. (Tr. 9-10, 25, 34.) He did not inform Mr. Mansfield of the pending Indictment. (Id. at 25.) Agent Childers was aware that an Assistant United States Attorney had been in touch with Mr. Mansfield's attorney (Mr. Sparks) in an effort to set up a meeting with defendant. (Id.)

Mr. Mansfield, Agent Childers, and Task Force Officer Mark Mayton met on June 11, 2014, in an interview room at the Austin FBI office. (Tr. 10-11, 13.) At the outset of that meeting, Agent Childers advised Mr. Mansfield of his Miranda rights using an FBI "advice of rights" form. (Id. at 11; see also Gov't Ex. 1.) Agent Childers filled in the blanks at the top of the form, explained the rights listed thereon to Mr. Mansfield, and then allowed him to read those rights for himself. (Tr. 12.)

Agent Childers then read aloud the form's consent statement, asked Mr. Mansfield to read it, and asked that he sign the form if he agreed to speak with the agents. (Id.) Mr. Mansfield reviewed the form, asked no questions, and signed it. (Id.) At no point did Mr. Mansfield invoke his right to remain silent or his right to an attorney. (Id. at 17.)[2]

At the beginning of the interview, Agent Childers discussed the other investigation with Mr. Mansfield; they did not discuss child pornography. (Tr. 29.)[3] Agent Childers did not remind Mr. Mansfield that an attorney had been appointed to represent him in that other investigation. (Id. at 29-30.) Agent Childers was also aware that Mr. Mansfield's counsel had requested to be notified if agents located his client. (Id. at 30.) However, Agent Childers did not feel that it was appropriate to contact Mr. Sparks to request the right to talk to Mr. Mansfield. (Id.) Agent

---

[2] Defendant does not assert that the waiver was obtained through threats or promises, that he was under duress, ill, denied food, water, or restroom breaks, or under the influence of any substance. In fact, defendant agrees that he was "not in custody during that interview." (Def.'s Br. 3; see also id. at 9-10 ("Mansfield was not in custody at the time of the police interview suggesting that he had no Fifth Amendment protections at that time.").)

[3] Agent Childers testified that, by the time of this interview, Mr. Mansfield was no longer a target in the other investigation but had morphed into a witness. (Tr. 30-31, 35.) However, there is no evidence that Mr. Mansfield knew that he was no longer a target.

Childers considered the instant case and the other investigation unrelated, although he concedes that this case arose out of the seizure and search of defendant's computer in the other investigation. (Id. at 29-30.)

About halfway through the two and one-half hour interview, agents advised defendant that child pornography had been found on his computer. (Tr. 18-19, 28.) At the conclusion of the interview, agents placed the defendant under arrest for possession of child pornography. (Id. at 26.)

## II.   THE INDICTMENT

On May 29, 2014, the grand jury returned a one-count Indictment against defendant, alleging that, beginning on a date unknown but at least by February 15, 2014, in the Northern District of Georgia, Mr. Mansfield did knowingly possess at least one matter, including a computer, which contained one or more visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), said depictions (a) having been produced using minors engaging in sexually-explicit conduct, (b) involving at least one prepubescent minor and at least one minor who had not attained twelve years of age, and (c) having been shipped and transported in and affecting interstate and foreign commerce, by any means, including by computer, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

**III.   CONTENTIONS OF THE PARTIES**

Mr. Mansfield argues that agents wrongfully elicited statements from him in violation of his Sixth Amendment right to counsel. (Def.'s Br. 3, 12.) The Government responds that defendant's waiver of his Fifth Amendment rights though execution of the Miranda form also waived his Sixth Amendment right to counsel. (Gov't Resp. 7-9.)

**IV.   ANALYSIS**

The issue raised in this case requires consideration of both the Fifth[4] and Sixth[5] Amendments to our Constitution. The Fifth Amendment prohibits a suspect's compelled self-incrimination during custodial interrogation without advice that he has the right to remain silent and the right to the presence of an attorney. Edwards v. Arizona, 451 U.S. 477, 481-82 (1981). However, absent custodial interrogation, there is no infringement on a suspect's Fifth Amendment rights. Id. at 486. Because

---

[4] The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V.

[5] The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI.

7

defendant agrees that there was no custodial interrogation here (see supra note 2), there was no Fifth Amendment violation.[6]

The Sixth Amendment guarantees the right to counsel "'at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Fellers v. United States, 540 U.S. 519, 523 (2004) (quoting Brewer v. Williams, 430 U.S. 387, 398 (1977)). With regard to the other investigation, Mr. Mansfield's Sixth Amendment right had not attached since judicial proceedings had not been initiated. "The fact that [Mr. Mansfield] was presented with a target letter does not change this fact because a target letter does not mark the initiation of formal charges." United States v. Mshihiri, Crim. No. 13-184 (DSD/JJK), 2014 WL 348571, at *9 n.3 (D. Minn. Jan. 31, 2014); see also Moran v. Burbine, 475 U.S. 412, 430 (1986) ("[T]he suggestion that the existence of an attorney-client relationship itself triggers the

---

[6] The standards governing Sixth and Fifth Amendment violations are different. As noted above, under the Fifth Amendment, law enforcement cannot use statements taken from a custodial defendant subject to interrogation without employing the Miranda safeguards. See Rhode Island v. Innis, 446 U.S. 291, 300 (1980). "The standard under the Sixth Amendment focuses the analysis on whether the police deliberately elicited incriminating statements." United States v. Laster, 184 F. App'x 859, 862-63 (11th Cir. 2006) (per curiam). Whether a person is in custody is not controlling in a claimed Sixth Amendment violation. Innis, 446 U.S. at 300 n.4.

8

protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel."); United States v. Ingle, 157 F.3d 1147, 1151 (8th Cir. 1998) ("[N]either custodial interrogation nor a grand jury appearance triggers the Sixth Amendment right to counsel absent the initiation of formal charges, even if the target of those investigative actions is represented by counsel.").

The Supreme Court has "pegged commencement [of the right to counsel] to 'the initiation of adversary judicial criminal proceedings–whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Rothgery v. Gillespie Cnty., Tex., 554 U.S. 191, 198 (2008) (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)); see also McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (Sixth Amendment right to counsel attaches when "prosecution is commenced"). Therefore, Mr. Mansfield had a Sixth Amendment right to counsel at the time of the Austin interview on June 11, 2014, because the grand jury had returned the instant Indictment on May 29, 2014. See Massiah v. United States, 377 U.S. 201, 204-206 (1964) (indicted defendant has right to counsel at police interrogation). However, Mr. Sparks did not yet represent Mr. Mansfield in the instant child pornography case because the right to counsel is offense specific. In other words, while Mr. Sparks represented defendant in the other investigation, he did not yet represent him in the

9

instant case. United States v. US Infrastructure, Inc., 576 F.3d 1195, 1216 (11th Cir. 2009) (Sixth Amendment right is "offense specific" and applies only to offenses for which an accused has been charged, not to other offenses still under investigation).

Even if it could be said that Mr. Sparks represented defendant in this case, "the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." Montejo v. Louisiana, 556 U.S. 778, 786 (2009). As the Court explained:

> The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. Michigan v. Harvey, 494 U.S. 344, 352-353, 110 S. Ct. 1176, 108 L.Ed.2d 293 (1990). And when a defendant is read his Miranda rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the Miranda rights purportedly have their source in the Fifth Amendment[.]

Id. If there is no valid waiver, "[t]he penalty for violation of this Sixth Amendment right is suppression of the accused's incriminating statements." US Infrastructure, 576 F.3d at 1216.

To summarize the above legal standards, a Sixth Amendment violation occurs when (1) government agents (2) deliberately elicit incriminating statements from an accused after he has been indicted, outside the presence of counsel, and (3) in the

absence of any waiver of his Sixth Amendment rights. United States v. Richitelli, 420 F. App'x 861, 867 (11th Cir. 2011) (per curiam) (citing Fellers, 540 U.S. at 523-25). The defendant "has the burden of establishing a violation of this Sixth Amendment right to counsel." United States v. Silva, No. 1:09-CR-361-RWS-AJB, 2010 WL 5620450, at *7 (N.D. Ga. Nov. 1, 2010), report & recommendation adopted, 2011 WL 196322, at *1 (N.D. Ga. Jan. 20, 2011). Moreover, "courts will 'indulge every reasonable presumption against waiver.'" Lindsey v. Smith, 820 F.2d 1137, 1149 (11th Cir. 1987) (quoting Brewer, 430 U.S. at 404).

It is clear that the agents here gave a proper Miranda warning to Mr. Mansfield when the interview began and before asking him any questions. If defendant had been in custody and questioned about the other investigation, the undersigned would have no difficulty concluding that he waived his right to an attorney. However, it is probable that defendant believed that he was being questioned about the other investigation since he was a target. When he waived his right to an attorney and answered questions about the child pornography found on his computer, he did not know that he was under indictment and would be arrested at the completion of the interview. The question then becomes whether agents had a duty to inform Mr.

11

Mansfield of the Indictment so that the waiver of his Sixth Amendment right would be "voluntary, knowing, and intelligent." Montejo, 556 U.S. at 786.

In Patterson v. Illinois, 487 U.S. 285 (1988), the Supreme Court expressly reserved that question, as shown in the following footnote from that case:

> Even those lower court cases which have suggested that something beyond Miranda warnings is–or may be–required before a Sixth Amendment waiver can be considered "knowing and intelligent" have failed to suggest just what this "something more" should be. See, e.g., Felder v. McCotter, 765 F.2d 1245, 1250 (CA5 1985); Robinson v. Percy, 738 F.2d 214, 222 (CA7 1984); Fields v. Wyrick, 706 F.2d 879, 880–881 (CA8 1983).
>
> An exception to this is the occasional suggestion that, in addition to the Miranda warnings, an accused should be informed that he has been indicted before a postindictment waiver is sought. See, e.g., United States v. Mohabir, 624 F.2d 1140, 1150 (CA2 1980); United States v. Payton, 615 F.2d 922, 924-925 (CA1), cert. denied, 446 U.S. 969, 100 S. Ct. 2950, 64 L.Ed.2d 830 (1980). Because, in this case, petitioner concedes that he was so informed, see Brief for Petitioner 3, we do not address the question whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment waiver will be valid. Nor do we even pass on the desirability of so informing the accused–a matter that can be reasonably debated. See, e.g., Tr. of Oral Arg. 24.

Id. at 295 n.8.

This issue has had subsequent attention in the Circuit Courts of Appeal (although not in the Eleventh). In United States v. Chadwick, 999 F.2d 1282 (8th

12

Cir. 1993), the defendant contacted law enforcement and offered to reveal (and later did reveal) the whereabouts of several marijuana patches (some of which were on Forest Service land). Id. at 1283. After obtaining an indictment against the defendant, a Forest Service agent went to his home, advised him of his Miranda rights, obtained his signature on a waiver form, showed him the evidence that had been collected against him, and asked him to make a statement. Id. at 1284. However, the agent did not tell the defendant that he had been indicted and the agent did not arrest Chadwick during the interview. Id. The district court suppressed Chadwick's statement because agents failed to inform him of the indictment. Id.

On appeal, after noting Patterson's reservation of the issue, the Eighth Circuit stated as follows:

> Every circuit to have considered this issue, however, has held that the authorities need not inform the accused that he has been indicted before seeking a postindictment waiver. See United States v. Charria, 919 F.2d 842, 848 (2d Cir. 1990), cert. denied, 502 U.S. 813, 112 S. Ct. 62, 116 L.Ed.2d 38 (1991); Riddick v. Edmiston, 894 F.2d 586, 590-91 (3rd Cir. 1990); United States v. Muca, 945 F.2d 88, 90-91 (4th Cir. 1991), cert. denied, 502 U.S. 1078, 112 S. Ct. 983, 117 L.Ed.2d 145 (1992); Quadrini v. Clusen, 864 F.2d 577, 585-87 (7th Cir. 1989); Norman v. Ducharme, 871 F.2d 1483, 1487 (9th Cir. 1989), cert. denied, 494 U.S. 1031, 110 S. Ct. 1483, 108 L.Ed.2d 619 (1990).

Chadwick, 999 F.2d at 1284.

13

Chadwick noted that the district court had acknowledged the post-Patterson appellate decisions which held that a defendant may make a valid Miranda waiver of counsel without knowledge of the indictment. Chadwick, 999 F.2d at 1284-85. But, the district court had distinguished those appellate decisions on the ground that the defendants in those cases had been under arrest whereas Chadwick had not. Id. at 1285. However, the Eighth Circuit did not consider "this factual distinction to be dispositive." Id. It reasoned as follows:

> In Patterson, the Court stated that the key inquiry to determine the validity of a Sixth Amendment waiver was whether "the accused, who waived his Sixth Amendment rights during postindictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel[.]"
>
> The Court articulated several reasons why Miranda warnings suffice to advise a defendant of his Sixth Amendment rights. First, Miranda warnings make it clear to the accused that he has the right to have an attorney present during questioning, to consult with an attorney, and to have one appointed for him if he cannot afford one of his own. The Court noted that after a government agent has advised the accused of his Miranda rights, there is little more that the accused can possibly be told in an effort to satisfy this portion of the waiver inquiry. Second, the Court observed that the Miranda warnings also make the accused aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning by informing him "that any statement that he [makes can] be used against him in subsequent criminal proceedings." Last, the Court noted that these warnings suffice to inform the accused concerning the value an

14

> attorney would be to him, namely, to advise him not to make any inculpatory statements. These warnings, the Court stated, inform the accused "of the possible consequences of going without counsel during questioning." Accordingly, the Court concluded that "[a]s a general matter . . . an accused who is admonished with the warnings prescribed by this Court in Miranda . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be a knowing and intelligent one."
>
> In the light of the holding in Patterson, and in view of the Court's skepticism about the proposition that it is even desirable to inform an accused that he has been indicted, 487 U.S. at 295 n.8, 108 S. Ct. at 2396 n.8 ("Nor do we even pass on the desirability of so informing the accused–a matter that can be reasonably debated."), we follow the Second, Third, Fourth, Seventh, and Ninth Circuits and hold that law enforcement officers need not inform an accused that he has been indicted before seeking a waiver of his right to counsel.

Id. at 1285-86 (citations omitted) (alterations in original).

A noted treatise asserts that, although an accused may waive his Sixth Amendment rights without knowledge of an indictment against him, post-Patterson authority nevertheless requires that the defendant be apprised of the nature of the crime for which he is being arrested and the gravity of his situation. See Wayne R. LaFave, et al., Criminal Procedure § 6.4(f) (3d ed. 2013).[7] Id. This treatise would

---

[7] Footnote 124, which follows that assertion, discusses some of the post-Patterson cases in this way:

15

suggest that Mr. Mansfield's Motion to Suppress be granted, given that he was not under arrest and likely assumed that the waiver he provided was related to questions about the other investigation for which he was a target.

The undersigned is reluctant to apply that treatise here. First, it does not address Chadwick, which held the factual distinction of arrest to be immaterial. Additionally, although Mr. Mansfield was not apprised of the nature of his crime and the gravity of his situation, which Professor LaFave suggests is appropriate, Chadwick correctly observed that the Supreme Court is skeptical over whether it is even desirable to inform an accused that he has been indicted.

---

> Norman v. Ducharme, 871 F.2d 1483 (9th Cir. 1989) (accomplished by display of arrest warrant to defendant, even if he did not read the statement therein that an information had been filed). See also United States v. Charria, 919 F.2d 842 (2d Cir. 1990) (sufficient "accused understands that he is under arrest"); Riddick v. Edmiston, 894 F.2d 586 (3d Cir. 1990) (sufficient defendant "aware of the gravity of the situation"); Quadrini v. Clusen, 864 F.2d 577 (7th Cir. 1989) (sufficient defendant knew he had been arrested for murder); United States v. Muca, 945 F.2d 88 (4th Cir. 1991)[.]

Id. As shown above, the treatise lists the Muca decision in note 124, but has no summary of its holding. The facts in Muca show that the defendant was under arrest for drug violations when he was given the Miranda warnings and then questioned. Muca, 945 F.2d at 89.

Given that the agents properly administered Miranda warnings, the undersigned finds that Mr. Mansfield made a voluntary, knowing, and intelligent waiver of his right to counsel. Under Patterson, the key inquiry is not whether the defendant knew why he was being questioned, but whether "the accused, who waived his Sixth Amendment rights during postindictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel[.]" 487 U.S. at 292-93. "In this case, [the undersigned is] convinced that by admonishing [Mr. Mansfield] with the Miranda warnings, [the government] has met this burden and that [Mr. Mansfield]'s wavier of his right to counsel at the questioning was valid." Id. at 293.

## VI.  CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that defendant's Motion to Suppress Statements [15] be **DENIED**.

**SO RECOMMENDED**, this 14th day of November, 2014.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)